**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO. 13-cv-6656** |
| **v.** ) | |
| ) | **Magistrate Judge Mary Rowland** |
| **ROSEBUD RESTAURANTS, INC., et al,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**CONSENT DECREE**

1.     On September 17, 2013, the EEOC ("EEOC" or "Commission") filed a lawsuit against Defendants Rosebud Restaurants, Inc.; Carmine's; GAMA, Inc. d/b/a The Rosebud; Rose Dearborn, Inc. d/b/a Rosebud Prime; Rose Northwest, Inc. d/b/a Rosebud Old World Italian; Rose East, Inc. d/b/a Rosebud Steakhouse; Rosebud Italian Country House and Pizzeria a/k/a Rosebud-Deerfield; Rosette's, Inc. d/b/a/ The Rosebud Theatre District; Rose North, Inc. d/b/a Rosebud of Highland Park; Rose West, Inc. d/b/a Rosebud Italian Specialties and Pizzeria; Rosebud Burger & Comfort Foods; Illinois Dearborn, LLC d/b/a Rosebud Trattoria;[1] Rose Hubbard, LLC d/b/a EATT and/or Bar Umbriago and/or Ristorante Centro; and Rose Rush, Inc. d/b/a Rosebud on Rush (collectively, Defendants or "Rosebud"), alleging that they discriminated against a class of African-Americans by failing or refusing to hire them because of their race, in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-2(a)(1).  EEOC further alleged that Defendants had failed, in violation of Section 709(c) of Title

---

[1] Illinois Dearborn, LLC has subsequently done business as Joe Fish and Mama's Boy.

VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices had been or are being committed, including failing to keep applications for employment for one year, as required by 29 C.F.R. § 1602.14, and failing to file Employer Information Report EEO-1s (EEO-1 reports) prior to 2009, as required by 29 C.F.R. §§ 1602.7-1602.11.

2.     Defendants filed their Answer on June 12, 2015, in which they denied the allegations of the Complaint.  This Consent Decree shall not constitute either an adjudication or finding on the merits of the complaint or Defendants' defenses and shall not be construed as an admission by any party of the claims or defenses of any other party.

3.     In the interest of resolving these matters, and as a result of having engaged in comprehensive settlement negotiations, the parties have agreed that these actions should be finally resolved by entry of this Consent Decree (hereafter "Decree").  The EEOC will not use the Charge relating to this lawsuit as the jurisdictional basis for filing any other lawsuit or lawsuits against the Defendants and this Decree is intended to be the complete resolution of such Charge and of this lawsuit.

4.     This Decree fully and finally resolves any and all issues and claims arising out of the Complaint filed by the EEOC in this action.

## **DEFINITIONS**

5.     **Best Efforts**: Best Efforts means implementing and adequately funding a plan reasonably designed to comply with all of the specific objectives of this Decree.  The failure to achieve Hiring Goals is not in and of itself dispositive evidence of failure to use Best Efforts.

6.     **Covered Restaurant**: Covered Restaurant means a restaurant operated by any Defendant(s) at any time during the duration of the Decree, including any restaurant that is newly

established, renamed, or relocated during the term of the Decree and/or any restaurant in which Defendant Rosebud Restaurants, Inc. is an owner, shareholder or member or for which it provides administrative or management services at any time during the duration of the Decree.

7. **Eligible Claimants**: For purposes of this Decree, an Eligible Claimant (1) is Black or African-American (which may include individuals who identify as more than one race); (2) applied for a position with Defendants on or after November 4, 2009 to the present; 3) was included on the list of Claimants EEOC provided to Rosebud prior to entry of the Decree; and 4) submitted a timely Claim Form as required by Paragraph 20 below.

8. **Qualified:** A Qualified applicant or claimant is determined based upon the positions sought. Below are listed the minimum education and/or experience requirements for certain positions to be a qualified applicant. Other requirements may apply (e.g., availability, ability to perform physical requirements of the position), and if so, shall be applied consistently to all applicants for that position. When experience is listed as a requirement, the experience must have been within the preceding five years, and formal educational achievement relating to the position sought may be substituted for experience. (For example, a culinary degree from an accredited institution may replace the experience requirement for a pantry, line or prep cook).

<u>Unit Business Manager*</u>

- Three continuous[2] years of management experience in the hospitality industry and/or at a restaurant that has table service, a full bar, a scratch kitchen and a wine list;
- Ability to read, draft and understand financial reports (i.e., P&L statements, labor costs, food costs and the like); and
- High school degree or equivalent.

---

[2] "Continuous" as used in this Paragraph is not intended to mean that no break in service is allowed for the requisite period (such as a period of unemployment between positions in the hospitality and/or restaurant industry, as applicable), but means experience in the relevant position(s) in the hospitality and/or restaurant industry for the requisite period is uninterrupted by work in other industries.

**General Manager\***

- Two continuous years of management experience in the hospitality industry and/or at a restaurant that has table service, a full bar, and a wine list;
- Five years restaurant experience at a restaurant that has table service, a full bar, a scratch kitchen and a wine list;
- Ability to read, draft and understand financial reports (i.e., P&L statements, labor costs, food costs and the like); and
- High school degree or equivalent.

**Manager\***

- One continuous year of prior management experience at a restaurant that has table service, a full bar, and a wine list or three years of experience as a server or bartender at a restaurant that has table service a full bar, a scratch kitchen and a wine list;
- Ability to read, draft and understand financial reports (i.e., P&L statements, labor costs, food costs and the like); and
- High school degree or equivalent.

**Executive Chef\***

- Two continuous years of prior kitchen management experience in the hospitality industry and/or at a restaurant that has table service a full bar, a scratch kitchen and a wine list;
- Ten years of cooking experience or a culinary degree from an accredited institution;
- Must have worked in a scratch kitchen (Italian restaurant experience preferred);
- Ability to read, draft and understand financial reports (i.e., P&L statements, labor costs, food costs and the like); and
- High school or equivalent.

**Sous Chef\***

- One year of prior experience as a sous chef at a restaurant that has table service a full bar, a scratch kitchen and a wine list;
- Five years of restaurant experience at a restaurant;
- Must have worked in a scratch kitchen (Italian restaurant experience preferred);
- Ability to read, draft and understand financial reports (i.e., P&L statements, labor costs, food costs and the like); and
- High school or equivalent.

**Bartender\***

- Two years experience in a full service bar, or a comparable training from an accredited institution and one year of bar service experience;
- Current certification in a nationally recognized program concerning service of alcohol or able to be obtained upon being hired;

- Certification from the state Professional Food Handler Program or able to be obtained upon being hired; and
- High school degree or equivalent.

**Server\***

- Continuous restaurant experience as a server in the last two years;
- Must have worked in a restaurant where the applicant provided table service, and the restaurant had a full bar and a wine list (Italian restaurant experience preferred);
- Current certification in a nationally recognized program concerning service of alcohol or able to be obtained upon being hired;
- Certification from the state Professional Food Handler Program or able to be obtained upon being hired; and
- High school degree or equivalent.

**Busser**:  six months of restaurant experience.

**Dishwasher**:  six months of restaurant experience.

**Pantry Cook**: six months of restaurant experience or comparable education.

**Prep Cook**: one year of restaurant experience or comparable education.

**Runner**: one year of restaurant experience.

**Bar Back**: six months of full service bar experience.

**Line Cook**:  one year of restaurant experience or comparable education.

**Accountant**:  requires a bachelor's degree or higher in accounting or comparable restaurant accounting experience.

**Host**: there are no minimum qualifications for host positions.

    \* The requirements for these positions may be waived for employees who are promoted within or between any Covered Restaurant.

    If at any time during the term of the Decree Defendants wish to revise any of the minimum qualifications identified above, Defendants shall submit the proposed revisions to EEOC prior to their implementation. EEOC can provide comments and recommendations regarding the proposed revisions.

If during the term of the Decree Defendants need to hire for a position not identified above, they shall include all minimum qualifications in any job announcement, advertising, or posting and shall provide the minimum qualifications to EEOC prior to issuing any job announcement, advertising, or posting.

## FINDINGS

9.      Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the parties, the Court finds the following:

a.      This Court has jurisdiction of the subject matter of this action and of the parties.

b.      The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of EEOC, Defendants, the claimants, and the public interest are adequately protected by this Decree.

c.      This Decree conforms to the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights or privileges of any person. The entry of this Decree will further the objectives of Title VII and will be in the best interests of the parties, the claimants, and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

## SCOPE OF THE DECREE

10.      The terms of this Consent Decree shall be binding upon the present and future directors, officers, managers, agents, successors and assigns of Defendants. The terms of this Decree apply to all restaurants operated by Defendants at any time during the duration of the Decree, including any restaurants that are newly established, renamed, or relocated during the term of the Decree. The terms of this Decree apply to all restaurants in which Defendant Rosebud Restaurants, Inc. is an owner, shareholder or member or for which it provides

administrative or management services at any time during the duration of the Decree.

11.    For purposes of this Decree, Defendants agree that the employees of each Covered Restaurant within the scope of this Decree (see Paragraphs 6 and 10) are jointly employed by Rosebud Restaurants, Inc. and any other Defendant or entity that is an owner or operator of that Covered Restaurant.

## INJUNCTIONS REGARDING RACE DISCRIMINATION, RETALIATION, AND RECORD RETENTION

12.    Defendants, their officers, agents, employees, successors, assigns and all persons acting in concert or participation with them are hereby enjoined from engaging in any employment practice in violation of Title VII that discriminates against applicants or employees on the basis of race in hiring, termination and/or that constitutes harassment on the basis of race. This Paragraph does not prohibit Defendants from complying with the terms of this Decree. Nothing in this Consent Decree shall prevent Defendants from using the Decree as a defense to claims brought by individuals who were not hired.

13.    Defendants, their officers, agents, employees, successors, assigns and all persons acting in concert with them are enjoined from engaging in any form of retaliation against any person because such person has opposed any practice made unlawful under Title VII, filed a Charge of Discrimination under Title VII, testified or participated in any manner in any investigation, proceeding, or hearing under Title VII,  asserted any rights under this Decree, or benefited from the relief provided by this Decree.

14.    Defendants, their officers, agents, employees, successors, assigns and all persons acting in concert with them are enjoined from failing to make, keep, preserve, and retain all applications, application materials (e.g., resumes, letters, written employment inquiries by applicants, including by email), communication between Defendants and any third party (e.g.,

job-posing website, newspaper) regarding recruitment efforts or advertisements for employment, and any other materials which reflect information provided to Defendants regarding job applicants, as required by Title VII and its implementing regulations.

## EEO-1 REPORTING

15.     Each Defendant shall file an EEO-1 report annually during the term of the Decree.

## MONETARY RELIEF

16.     Defendants shall pay the gross aggregate sum of $1,900,000 to be distributed among the Eligible Claimants. Within thirty (30) days of the entry of this Decree, Defendants shall cause to be established a Settlement Fund ("Settlement Fund") in the amount of $1,900,000, to be distributed to the Eligible Claimants as provided in Paragraphs 17-32 of this Decree. EEOC shall have the sole authority to determine the class of individuals who are Eligible Claimants and the amount of monetary payments they shall receive.

17.     **Identification of Potential Eligible Claimants.** The Claims Administrator shall be Settlement Services, Inc.  Pursuant to its proposal to Rosebud, the Claims Administrator shall: (1) mail notices and forms related to settlement, claims forms and claims notices; (2) receive claim forms; (3) transmit notification of monetary awards; (4) issue checks to Eligible Claimants from the Settlement Fund; (5) issue related tax documents; and (6) perform such other administrative tasks as it may deem necessary to facilitate the claims process.

18.     **Mailing of Claims Packages.** Within seven (7) calendar days of entry of the Decree, EEOC shall provide the Claims Administrator a list of potential Eligible Claimants. Within fourteen (14) days after receiving the list of potential Eligible Claimants, the Claims Administrator shall mail, via United States Mail, certified mail, a cover letter from EEOC containing notice of the settlement, an explanation of the claims procedure, and a claim form

8

("Claim Package"), to all individuals on the list. To provide the best notice practicable, before mailing the Claim Packages, the Claims Administrator will run the list of all potential Eligible Claimants through the United States Postal Service's National Change of Address database ("NCOA").

19. **Returned Claims Packages.** If envelopes from the mailing of the Claim Packages are returned with forwarding addresses, the Claims Administrator will re-mail the Claim Packages to the new address within three (3) business days. If no forwarding address has been provided, the EEOC may attempt to obtain updated address information. If the EEOC provides new addresses to the Claims Administrator, the Claims Administrator will re-mail Claim Packages with three (3) business days of receipt of the new address. If a postal address is not available but an email address is available, the Claims Administrator may use email as a substitute.

20. **Submission of Claim Forms.** Potential Eligible Claimants who seek to recover monetary compensation must complete a claim form and cause it to be received by the Claims Administrator within ninety (90) days after Entry of the Decree. The claim form must be received by the Claims Administrator on or before such date in order to be considered. Any person whose claim form is not actually received by the Claims Administrator within ninety (90) days after entry of the Decree shall be forever barred from receiving any relief under this Decree or in connection with this action. Within ninety-five (95) days after entry of the Decree, the Claims Administrator shall provide EEOC with the electronic copies of all timely received claim forms.

21. **Confidentiality of Claim Forms**. Claim Forms received by the Claims Administrator and EEOC shall be treated as confidential and shall not be disclosed to Defendants

or any other person or entity, except that such Claim Form may be submitted confidentially to the Court if requested by the Court.

22. **Late Claims**. For claims received after the filing deadline, the Claims Administrator shall notify the late-filing individuals that their claims are untimely and that they are not eligible for any monetary award.

23. **Determination of Claims**. Within one hundred twenty (120) days after entry of the Decree, EEOC shall make a determination ("Determination of Claims") as to whether the individuals who filed timely claims are eligible to receive monetary awards. This Determination is not subject to review or consent by Defendants.

24. **Allocation of Monetary Relief**. EEOC shall, in its sole discretion, allocate relief based on the position applied for, the claimant's qualifications, job history (likelihood of hire in the absence of discrimination), demonstrated interest in the restaurant industry, and level of participation in the litigation.

25. **Notification of Awards**. Within ten (10) days of the EEOC's Determination of Claims, EEOC shall cause the Claims Administrator to notify ("Notification of Award") each Eligible Claimant via U.S. First Class Mail of the amount of her monetary award.

26. **Release of Claims**. Along with the Notification of Award, the Claims Administrator shall mail to each Eligible Claimant a Release (a copy of which is attached hereto as Exhibit A). Each Eligible Claimant will be notified that in order to receive monetary payments under this Decree, he or she must execute and deliver to the Claims Administrator a Release. The letter will inform each Eligible Claimant that such Release must be signed and mailed to the Claims Administrator so that it is actually received by the Claims Administrator within thirty (30) days of the mailing of the Notification of Award and obligate the Eligible

Claimant to notify the Claims Administrator of any future changes of address for payment. Any Eligible Claimant whose executed Release is not actually received by the Claims Administrator within thirty (30) days of the mailing of the Notification Award shall be ineligible for and forever barred from receiving any relief under this Decree, except as provided in Paragraph 29 below. The Claims Administrator shall provide all original signed Releases to Defendants.

27. **Untimely or Unreturned Releases**. In the event that any Eligible Claimant's executed Release is not actually received by the Claims Administrator within thirty (30) days of the mailing of the Notification Award, his/her share of the Settlement Fund shall be distributed equally among the Eligible Claimants who return timely releases. In no event shall there be any reversion of any part of the settlement funds to Defendants.

28. **Distribution of Settlement Fund**. The Claims Administrator shall issue checks to each Eligible Claimant within twenty-one (21) days of the date by which all releases must be received by the Claims Administrator.

29. **Returned or Uncashed Checks**. The Claims Administrator shall promptly notify EEOC in writing of any checks that are returned or are not cashed after a period of ninety (90) days has elapsed from the date on which the settlement checks were mailed. In the event that any Eligible Claimant's check is undeliverable or uncashed, and the EEOC determines that the Eligible Claimant cannot be located (hereafter referred to as a "missing Eligible Claimant"), the missing Eligible Claimant shall receive no payments under the Decree. In the event that any portion of the Settlement Fund has been allocated to a missing Eligible Claimant, and therefore cannot be distributed to the claimant, one hundred fifty (150) days after the checks were originally mailed, in the discretion of the EEOC, the balance of the Settlement Fund shall either (i) be distributed to any Eligible Claimants who returned executed releases more than thirty (30)

11

but less than one hundred fifty (150) days of the mailing of the Notification of Award, and/or (ii) be designated as a *cy pres* fund to be distributed to City Colleges of Chicago – Washburne Culinary Institute. In no event shall there be any reversion of any part of the Settlement Fund to Defendants.

30.      **Costs**. All costs associated with the distribution of the settlement funds to Eligible Claimants shall be paid by Defendants, including without limitation, the cost of the Claims Administrator, all postage costs related to the issuance and mailing of checks from the Settlement Fund and all costs associated with stopping payment on checks.

31.      **Claims of Deceased Persons**.  Monetary payments will be made on behalf of deceased claimants through representatives of their estate or next of kin if the EEOC determines that appropriate documentation (*e.g.*, letters testamentary or the equivalent), has been provided. Any sums paid to a deceased claimant shall be made payable to the estate of the deceased claimant, or if no estate exists, to the decedent's next of kin.

32.      **Tax treatment**. Seventy-five percent (75%) of the amounts distributed from the settlement funds to Eligible Claimants constitute "compensatory damages," under the Civil Rights Act of 1991, 42 U.S.C. §1981a.  Twenty-five percent (25%) shall constitute back pay from which the employee's share of payroll taxes shall be withheld.  The Defendants shall be responsible for paying the employer's share of payroll taxes, and such payments shall not be made from or constitute any portion of the Settlement Fund.  The Claims Administrator will issue applicable forms W-2 and 1099 in January 2018, reflecting the payments made to each claimant from the Settlement Fund.

**HIRING RELIEF**

33.      To ameliorate past conduct alleged by the EEOC, Defendants agree to use Best

Efforts as defined in Paragraph 5 above to meet the following Hiring Goals for African-Americans. With respect to New Hires, Defendants shall hire an African-American applicant for two of every five New Hires until Defendants' workforce has a representation of 11%[3] African-Americans company-wide. This goal is Defendants' "Initial Hiring Goal." After the Initial Hiring Goal is met, Defendants shall ensure that a minimum of 11% of New Hires company-wide are African-American (the "Hiring Goal"). Defendants' failure to meet the Initial Hiring Goal or the subsequent Hiring Goal shall not constitute a violation of the Decree if Defendants have used Best Efforts to achieve those Hiring Goals. Defendants shall always have the right to hire who they considered to be the best qualified candidate, so long as Defendants use Best Efforts to meet the foregoing Hiring Goals.

34. Additionally, as part of the above Hiring Goals, Defendants' employment of African-Americans must be reasonably distributed across its restaurants and job categories rather than being concentrated predominantly in a small number of restaurants or in specific job types. Accordingly, in order for Defendants to be considered to have met the Hiring Goals, the percentage of African-Americans employed at each Covered Restaurant may not be less than half of the company-wide benchmark, and the percentage of African-Americans employed in each of the following job types may not be less than half of the company-wide benchmark: servers, cooks (including prep cooks, pantry cooks, and line cooks), and hosts.

35. "New Hire" for purposes of this section shall include hire into a full-time or part-time job, whether permanent, temporary or seasonal, and shall include any employee promoted by Defendants, and the rehire of any former employee of Defendants. "New Hire" shall not

_____

[3] The Hiring Goals were determined based on EEOC's analysis of Defendants' applicant flow and the external labor market indicating the availability of African-Americans workers for positions with Defendants.

include the transfer of an employee from one job title to another if such transfer does not constitute a promotion or bring an increase in the rate of pay. Defendants shall obtain a copy of a photo identification for all New Hires.

36. Defendants shall use a voluntary self-identification form to identify the race of applicants. The voluntary self-identification form shall be maintained separately from the applicant's other application materials. The voluntary self-identification form shall not be provided to any individual who makes or has input into decisions regarding whether to interview or hire an applicant prior to such decisions; however, such documents may be provided to such individuals afterwards as part of Defendants' record keeping and reporting obligations described herein, and such documents may be provided to employees working in Defendants' corporate offices relating to Defendants' reporting obligations.

37. EEOC will provide Defendants with an initial list of African-Americans interested in employment within twenty-one days of the entry of this Decree. EEOC will provide Defendants with a supplemental list of interested African-Americans within one hundred twenty days (120) days of entry of this Decree.

38. In order to fulfill their obligation to use Best Efforts to meet their Hiring Goals, Defendants will have discretion to select among Qualified African-American applicants subject to the following "claimant hiring preference:" If there is a qualified African-American applicant who was a claimant in this litigation, Defendants will offer a job to that Qualified African-American claimant before offering it to another Qualified African-American applicant who was not a claimant. If there is more than one Qualified African-American claimant, Defendants will have the discretion to select among them. If a Qualified African-American claimant refuses a position, he or she will lose the "claimant hiring preference" unless the position rejected is one

for which he or she is over-qualified or if the Covered Restaurant offering the position is more than thirty (30) miles from the applicant's home.

39.     With respect to Claimants interested in employment identified to Defendants pursuant to Paragraph 37 and all other African-American applicants, Defendants shall maintain their applications and screen and interview them in the same manner and based on the same standards as they do for all other applicants. Defendants shall apply the same qualification standards and hiring criteria to all applicants, regardless of race and/or status as a Claimant in the case.  Defendants may not subject African-American Claimants interested in employment to a different application process or require that they submit different or additional application materials than they require of all other applicants.

40.     In attempting to meet the Hiring Goal, Defendants shall not be required to select any unqualified person or to displace any incumbent employee from his or her position.

## RECRUITING

41.     Defendants shall endeavor in good faith to increase diversity in their workforce by conducting recruitment activities in the African-American community. In pursuit of this endeavor, Defendants shall engage in the following activities:

a.     In an effort to increase the African-American applicant pool, Defendants will contact four local culinary schools (Illinois Institute of Art--Chicago, Robert Morris College, City Colleges of Chicago – Washburne Culinary Institute and Le Cordon Bleu) in an effort to expand the diversity of applicants. Defendants agree to post open positions at the foregoing culinary schools and provide written notice to the schools informing them that they are equal opportunity employers and asking to refer qualified African-American graduates for positions with Defendants.

15

b.      Within thirty (30) days of entry of the Decree, Defendants shall certify in writing to the EEOC that the written notices required in paragraph 41 (a) have been provided and shall identify the culinary schools to which the notices have been provided.

c.      On at least two occasions per year, Defendants shall actively recruit African-Americans by advertising open positions by one of the following methods: either by on-air advertisements on or via Facebook or Twitter accounts (if possible) of WGCI (107.5 FM) or V103 (WVAZ-102.7 FM) radio and/or the Urban League Job Network (http://www.nulijobsnetwork.com).

d.      On at least two occasions per year, Defendants shall participate in job/career fairs geared toward African Americans in Chicago area communities; such communities are listed in Exhibit C.

e.      Upon entry of this Consent Decree, Defendants shall send a letter to the following agencies, notifying them that Defendants accept applications, describing the types of jobs available with Defendants and inviting the agencies to refer applicants to Defendants: Chicago Urban League, Chicago Workforce Center (Northside), Chicago Workforce Center (Garfield), Woodlawn Preservation, and Chicago Workforce Center (Southwest). Thereafter, Defendants shall send the same letter to each of these agencies during the first week of April and November for the duration of this Consent Decree.

## HIRING PROCEDURES

42.     Upon entry of this Decree, Defendants shall have in place a written, systematic, predetermined hiring procedure that is disclosed to all applicants to ensure that applicants are evaluated based upon their qualifications and interest in open positions and not on race.

43.     Upon entry of this Decree, Defendants shall have in place written objective hiring

criteria which expressly prohibit hiring decisions based on race.

44.     Within thirty (30) days of entry of this Decree, Defendants shall develop and implement a clearly described complaint process to be incorporated into Defendants' employment application that informs applicants that they can complain of discrimination to a designated person at Defendants, EEOC or to the Illinois Department of Human Rights.

45.     Within thirty (30) days of entry of this Decree, the EEOC shall be provided with the documents described in Paragraphs 42-44.  EEOC can provide comments and recommendations regarding the hiring procedure, hiring criteria, and complaint procedure developed and implemented pursuant to Paragraphs 42-44.

## POSTING OF NOTICES

46.     Within five (5) business days following entry of this Decree, Defendants shall post a same-sized copy of the Notice attached as Exhibit B to this Decree in a conspicuous location easily accessible to and commonly frequented by applicants for employment, and also for employees at each Covered Restaurant or in such other manner reasonably designed to be seen or received by such individuals.  If after entry of the Decree a location becomes a new Covered Restaurant, within five (5) days of becoming a Covered Restaurant, Defendants shall post a same-sized copy of the Notice attached as Exhibit B to this Decree in a conspicuous location easily accessible to and commonly frequented by applicants for employment or in such other manner reasonably designed to be seen or received by such individuals, and also employees of the Covered Restaurant. Nothing in this Paragraph shall be deemed to require Defendants to post such a notice in a place visible to Restaurant patrons.

47.     The Notices shall remain posted for the duration of the Decree.  Defendants shall ensure that the postings are not altered, defaced or covered by any other material.

48.     Defendants shall certify to EEOC in writing within ten (10) business days after entry of this Decree that the copies of the Notices have been properly posted and identify the locations of the postings. Defendants shall certify to EEOC in writing within ten (10) business days after a locations becomes a new Covered Restaurant that copies of the Notice have been properly posted and identify the locations of the posting at the new Covered Restaurant. Defendants shall permit a representative of EEOC to enter their premises for purposes of verifying compliance with this Paragraph at any time during normal business hours without prior notice.

## RECORD KEEPING

49.     For the duration of the Decree, Defendants shall maintain in their original native format, as well as in any other format that Defendants create or maintain, and make available for inspection and copying by the EEOC the following records:

a.      All applications, resumes, cover letters and any other supporting documents;

b.      All notes of interviews with an applicant, notes of other contact with an applicant, and notes of attempts to contact an applicant;

c.      All applicant voluntary self-identification forms and copies of photo identification for New Hires;

d.      A database containing for each applicant: the name, race, social security number, address, telephone number, position applied for, location of position applied for, date of application, interview date; date of job offer and position offered; whether a job offer was accepted or rejected; whether an applicant withdrew from the application process; whether an applicant failed to respond to an interview request; hire date; if applicable; and reason for

18

rejection for employment, if not given a job offer;

       e.     A database containing for each employee: name, employee number, race, social security number, address, telephone number, date of hire, restaurant(s) at which employed, position(s) held, dates positions held, termination date, and reason for termination;

       f.     All job descriptions and documents reflecting minimum qualifications for each position;

       g.     Payroll data;

       h.     Documents related to the termination of any African-American employee whose employment ceases whether at the employee's request or at the request of the employer;

       i.     Documents related to each complaint reported to management or human resources of race discrimination or harassment made by any applicant or employee. Such documents shall include the date the complaint was made, the name of the complainant, the allegations of the complaint, and what actions Defendants took, if any, to address the matter;

       j.     Documents related to each complaint reported to management or human resources of retaliation for complaining about race discrimination or harassment, or for benefiting from relief provided by this Decree, made by any applicant. Such documents shall include the date the complaint was made, the name of the complainant, the allegations of the complaint, and what actions Defendants took, if any, to address the matter;

       k.     All training materials and registries of attendance required by this Decree;

       l.     Copies of and all other documents related to advertisements for employment; and

       m.     Documents related to Defendants' efforts to recruit African-Americans for employment.

19

50.    Defendants shall make all documents or records referred to in Paragraph 49 above available for inspection and copying within fourteen (14) calendar days after the EEOC so requests.  Defendants shall require personnel within its employ whom the EEOC reasonably requests for purposes of verifying compliance with this Decree to cooperate with the EEOC and to be interviewed.

## **REPORTING**

51.    Within 180 days of entry of this Decree, and at six (6) month intervals thereafter for the duration of the Decree, Defendants shall provide Semi-Annual Reports to the EEOC. Defendants' final Semi-Annual Report shall be due 60 days before the expiration of the Decree. Defendants' Semi-Annual Reports shall include information regarding the following:

a.    Progress in reaching their Hiring Goals.  Defendants will indicate any shortfalls in achieving their Hiring Goals and will analyze the possible reasons for such shortfall, and will identify plans to facilitate achievement of the Hiring Goals;

b.    To the extent that the information is reasonably available to Rosebud, a database containing for each applicant:  the name, race, social security number, address, telephone number, position applied for, location of position applied for, date of application, interview date; date of job offer and position offered; whether a job offer was accepted or rejected; whether an applicant withdrew from the application process; whether an applicant failed to respond to an interview request; hired date; and if applicable, the reason for rejection for employment if not given a job offer;

c.    A copy of all applications, resumes, and cover letters and any other supporting documents submitted by applicants during the Reporting Period.  In addition, Defendants shall provide a copy of all applications, resumes, and cover letters for individuals

who applied outside of the Reporting Period, but whose applications were evaluated during the Reporting Period, or were interviewed, hired, and/or rejected for employment during the Reporting Period.

        d.      A database containing for each employee: name, employee number, race, social security number, address, telephone number, date of hire, position(s) held, dates positions held, termination date, and reason for termination;

        e.      The total number and percentage of persons companywide identified by race who were extended an offer, hired, or promoted into (reported separately) each position during the reporting period;

        f.      The total number and percentage of persons identified by race who were extended an offer, hired, or promoted (reported separately) each position at each Covered Restaurant during the reporting period;

        g.      The total number and percentage of persons identified by race who applied for each position at each Covered Restaurant during the reporting period;

        h.      The total number and percentage of persons identified by race who were interviewed for each position at each Covered Restaurant during the reporting period;

        i.      The total number and percentage of persons identified by race who were offered a position at each Covered Restaurant during the reporting period but declined the employment offer;

        j.      The total number and percentage of persons identified by race who voluntarily withdrew from consideration for a position at each Covered Restaurant during the reporting period and the reason(s) for the withdrawal, if known;

k. The total number and percentage of persons identified by race who were unresponsive to Defendants' attempts to conduct an in-person interview for a position at each Covered Restaurant;

l. The identification of each and every decision-maker for each New Hire, excluding persons reported pursuant to subparagraphs 51(j) and (k);

m. A detailed description of Defendants' efforts to recruit African-American employees;

n. An explanation regarding the termination of any African-American employee who is hired by the Defendants and whose employment ceases whether at the employee's request or at the request of the employer and documents related to such termination;

o. A description of all complaints or reports to management or human resources, oral or written, of race discrimination, harassment, or retaliation and what actions, if any, Defendant(s) took to resolve the matter.

p. A description of changes, if any, made during the reporting period to Defendants' application, interviewing, and hiring procedures, job descriptions, or qualifications or hiring criteria;

q. Certification that the Notices remain posted as required by Paragraph 46. If the location of posting or method or manner in which Defendants have complied with Paragraph 46 has changed during the reporting period, Defendants shall describe those changes;

r. With respect to the foregoing obligations to report race information, Defendants shall be required only to rely upon the voluntary self-identification forms. Defendants shall not be required to have employees identify an applicant's race when such an applicant chooses not to complete a voluntary self-identification form, and, therefore,

22

Defendants' inability to report such race information shall not be deemed a violation of this Decree.

## POLICIES AGAINST DISCRIMINATION

52.     Within sixty (60) days of the date of the entry of this Decree, Defendants shall review their policies against discrimination and retaliation and revise them, if necessary, so that such policies include, at minimum, the following:

        a.      A prohibition against race discrimination, including examples of actions that are prohibited;

        b.      A prohibition against racial harassment, including a definition of racial harassment and examples of behavior that could be considered racial harassment;

        c.      A prohibition against retaliation for complaining about race discrimination or harassment;

        d.      A provision that employees can complain of race discrimination, harassment, or retaliation to any person in the chain of command above the employee or directly to any human resources personnel; and that any person in the chain of command who received a complaint of race discrimination, harassment, or retaliation above the person who made the complaint must report the complaint to the manager of the Covered Restaurant and any human resources personnel;

        e.      A provision that employees are not required to complain of race discrimination, harassment, or retaliation to a person against whom they allege discrimination, harassment, or retaliation;

        f.      A provision that managers who receive a complaint of race discrimination, racial harassment or retaliation, or who witness or otherwise become aware of race

discrimination, racial harassment or retaliation, must report the conduct up the chain of command and/or to Human Resources.

g. A provision that an employee found to have engaged in race discrimination or harassment, will be subject to discipline, up to and including termination;

h. A provision that Defendants will protect the confidentiality of discrimination, harassment, and retaliation complaints to the extent possible;

i. A provision that employees who complain of race discrimination, race harassment or retaliation or provide information related to such complaints will not be retaliated against and that employees engaging in retaliation will be subject to discipline, up to and including termination; and

j. A provision that, promptly upon the conclusion of its investigation of a complaint, Defendants will communicate to the complaining party the results of the investigation and the remedial actions taken or proposed, if any.

53. The inclusion of Paragraph 52 in the Decree does not represent EEOC's or the Court's approval of Defendants' policies against race discrimination, race harassment, or retaliation.

54. Within sixty (60) days of entry of the Decree, Defendants shall provide the EEOC with the Policies required by Paragraph 52 above. The EEOC will have twenty-one (21) calendar days to comment on the Policies. Defendants must consider any suggestions made by EEOC with respect to their Policies. After the EEOC has commented, and there is no dispute regarding the comments, Defendants shall provide a hard copy of its policy to all of their employees. Thereafter, each Defendant shall make its anti-discrimination and anti-retaliation policies available to new hires upon hire.

## TRAINING

55.     During the term of this Decree, Defendants shall provide annual training for all non-management employees regarding Title VII's prohibition on discrimination based on race, (including, without limitation, discrimination in hiring, racial harassment, and other terms and condition of employment) and retaliation.

56.     All managers, human resources professionals, or employees who work for any of the Defendants and who have any responsibility for hiring at any of the Covered Restaurants (including by having input into or deciding which applicants to interview or hire, interviewing applicants, or making hiring decisions) or for enforcing Defendants' policy against discrimination and retaliation will participate in a separate session for such employees designed to cover their responsibilities under Title VII (hereafter, "management training session").

57.     All training required by this Section shall be conducted by an outside trainer paid for by Defendants and approved by EEOC.  The first annual training shall take place within sixty (60) days after the Defendants have issued their employment policies as required by Paragraph 54.

58.     Defendants shall obtain approval from the EEOC of their proposed trainer prior such individual conducting a training session.  Defendants shall submit the name, address, telephone number, resume and training proposal of the proposed trainer to the EEOC at least (30) calendar days prior to the proposed commencement date(s) of the training(s). The EEOC shall have seven (7) days from the date of receipt of the information described above to accept or reject the proposed trainer and/or proposal.  In the event the EEOC does not approve Defendants' designated trainer or proposal, Defendants shall have fourteen (14) days to identify an alternate trainer and/or provide a new training proposal.  The EEOC shall have seven (7) business days

from the date of receipt of the information described above to accept or reject the alternate trainer and/or proposal. If the parties cannot through this process agree on a trainer or training proposal, then they may seek the Court's assistance under Paragraph 64

59. The EEOC shall not unreasonably refuse approval of the trainer chosen by Defendants.

60. Defendants shall certify to the EEOC, in writing, within fourteen calendar (14) days after each management training session has occurred that the training has taken place and that the required personnel have attended. Such certification(s) shall include: (i) the date, location and duration of the training; (ii) a copy of the registry of attendance, which shall include the name and position of each person in attendance; and (iii) a list of all persons currently employed at each of the Covered Restaurants.

61. Within fourteen calendar (14) days after each management training session has occurred, Defendants shall provide the EEOC with copies of any and all pamphlets, brochures, outlines or other written material(s) provided to the participants of the training session(s).

62. To the extent that non-management training is conducted in-person by the Trainer, Defendants shall issue written reports and provide materials to the EEOC on the same terms as addressed in paragraphs 60-61; however, to the extent that non-management training is conducted via computer or internet, Defendants will provide a copy of such training to the EEOC in advance, and shall provide the EEOC with a list of all employees trained using this method as part of the biannual report to the EEOC and a list of employees employed during the reporting period who have not received training.

## DISPUTE RESOLUTION

63. To the extent that the EEOC has reasonable concerns about compliance with the

terms of this Decree, Defendants shall reasonably cooperate with the EEOC to address those concerns by providing documents and information when requested.

64.     In the event that either party to this Decree believes that the other party has failed to comply with any provision(s) of the Decree, the complaining party shall notify the other party of the alleged non-compliance in writing (either via letter or e-mail) and shall afford the alleged non-complying party fourteen (14) business days to remedy the non-compliance or to satisfy the complaining party that the alleged non-complying party has complied.  If the alleged non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within fourteen (14) business days, the complaining party may apply to the Court for appropriate relief, which may include modification of this Decree.  However, the EEOC will not pursue its rights under this Decree in Court with respect to racial harassment, unless, in its sole discretion, the EEOC believes the racial harassment is having an impact on the achievement of hiring and retention of African-Americans.  This Decree is only enforceable by the EEOC.

65.     In resolving any dispute with regard to Defendants' compliance with any provision of the Decree, the Court shall have available to it all equitable remedies which come within the Court's inherent authority, including, but not limited to, extension of any or all terms of the Decree and/or imposing a monetary fine for non-compliance.

## DURATION OF DECREE AND RETENTION OF JURISDICTION

66.     All provisions of this Decree shall be in effect (and the Court will retain jurisdiction of this matter to enforce this Decree) for a period of four (4) years immediately following entry of the Decree, provided, however, that if, at the end of the four (4) year period, any disputes under Paragraph 64 above, remain unresolved, the term of the Decree shall be

automatically extended (and the Court will retain jurisdiction of this matter to enforce the Decree) until such time as all such disputes have been resolved.

## MISCELLANEOUS PROVISIONS

67. The terms of this Decree shall be binding upon the present and future directors, officers, managers, agents, successors and assigns of Defendants. Defendants, and any successor(s) of Defendants, shall provide a copy of this Decree to any organization or person who proposes (in writing) to acquire or merge with Defendants, or any successor of Defendants, prior to the effectiveness of any such acquisition or merger. This Paragraph shall not be deemed to limit any remedies available in the event of any finding by the Court regarding a violation of this Decree.

68. Each party to this Decree shall bear its own expenses, attorney's fees, and costs.

69. If any provision(s) of the Decree are found to be unlawful, only such provision(s) shall be severed, and the remainder of the Decree shall remain in full force and effect.

70. When this Decree requires a certification by Defendants of any fact(s), such certification shall be made under oath or penalty of perjury by an officer or management employee of Defendants to the best of such officer's or management employee's knowledge, information and belief.

71. When this Decree requires notifications, reports, and communications to the Parties, they shall be made in writing and hand-delivered, mailed, e-mailed, or faxed to the following persons:

For EEOC:

Rosebud Settlement
Attn: Ann Henry
Equal Employment Opportunity Commission
500 W. Madison St., Suite 2000

Chicago, IL  60661
Facsimile:  (312) 869-8098
ann.henry@eeoc.gov

For Defendants:

Joseph M. Gagliardo
Jeff Fowler
Antonio Caldarone
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
312/467-9800
jgagliardo@lanermuchin.com
jfowler@lanermuchin.com
acaldarone@lanermuchin.com

Any party may change such persons or addresses by written notice to the other party,

setting forth a different individual or address for this purpose.

Agreed to in form and content:

**FOR PLAINTIFF**
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

P. David Lopez
General Counsel


Gwendolyn Young Reams
Associate General Counsel


/s/ Gregory Gochanour
Gregory Gochanour
Regional Attorney


/s/ Diane Smason
Diane I. Smason
Supervisory Trial Attorney


/s/ Ann Henry
Ann Henry
Trial Attorney


Equal Employment Opportunity
  Commission
500 W. Madison St., Suite 2000
Chicago, IL 60661


Date: May 22, 2017

**ROSEBUD RESTAURANTS, INC.**

BY:
Alex Dana, its President


Date: 5/24/17

**CARMINE'S**

BY:
Alex Dana, its President


Date: 5/24/17

**GAMA, INC. D/B/A THE ROSEBUD**

BY:
Alex Dana, its President


Date: 5/24/17

**ROSE DEARBORN, INC. D/B/A**
**ROSEBUD PRIME**

BY:
Alex Dana, its President


Date: 5/24/17

**ROSE NORTHWEST, INC. D/B/A**
**ROSEBUD OLD WORLD ITALIAN**

BY: _____

Alex Dana, its President

Date: _____ 5/24/17 _____

**ROSE EAST, INC. D/B/A ROSEBUD**
**STEAKHOUSE ROSEBUD ITALIAN**
**COUNTRY HOUSE AND PIZZERIA**
**A/K/A ROSEBUD-DEERFIELD**

BY: _____

Alex Dana, its President

Date: _____ 5/24/17 _____

**ROSETTE'S, INC. D/B/A/ THE**
**ROSEBUD THEATRE DISTRICT**

BY: _____

Alex Dana, its President

Date: _____ 5/24/17 _____

**ROSE NORTH, INC. D/B/A ROSEBUD**
**OF HIGHLAND PARK**

BY: _____

Alex Dana, its President

Date: _____ 5/24/17 _____

31

ROSE WEST, INC. D/B/A ROSEBUD
ITALIAN SPECIALTIES AND PIZZERIA
AND/OR ROSEBUD BURGER &
COMFORT FOODS

BY: _____
Alex Dana, its President

Date: _____5/24/17_____


ILLINOIS DEARBORN, LLC D/B/A
ROSEBUD TRATTORIA

BY: _____
Alex Dana, One of its Members

Date: _____5/24/17_____


ROSE HUBBARD, LLC D/B/A EATT
AND/OR BAR UMBRIAGO AND/OR
RISTORANTE CENTRO

BY: _____
Alex Dana, One of its Members

Date: _____5/24/17_____


ROSE RUSH, INC.

BY: _____
Alex Dana, its President

Date: _____5/24/17_____

DATE: <u>May 30, 2017</u>

_____

ENTERED:
The Honorable Mary Rowland
United States Magistrate Judge

# EXHIBIT A

## RELEASE

In consideration for the payment(s) to be paid to me by Defendants pursuant to the Consent Decree entered by Magistrate Judge Mary Rowland on May __, 2017, in connection with the resolution of *EEOC v. Rosebud Restaurants, Inc., et al*, No. 13 cv 6656 (N.D. Ill.), I waive my right to recover for any claims of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Civil Rights Act of 1991, 42 U.S.C. §1981a, that I had against Defendants prior to the date of this release and that were included in the claims alleged in EEOC's complaint in *EEOC v. Rosebud Restaurants, Inc., et al*, No. 13 cv 6656 (N.D. Ill.).

_____

Signature

_____

Name [Please Print]

_____

Date

# EXHIBIT B

## NOTICE TO ALL EMPLOYEES

This Notice is being posted pursuant to a Consent Decree entered by the federal court in *EEOC v. Rosebud Restaurants, Inc., et al*, No. 13 cv 6656 (N.D. Ill.), resolving a lawsuit filed by the Equal Employment Opportunity Commission ("EEOC") against Rosebud Restaurants, Inc. Carmine's, The Rosebud, Rosebud Prime, Rosebud Old World Italian, Rosebud Steakhouse, Rosebud Italian Country House and Pizzeria a/k/a Rosebud-Deerfield, The Rosebud Theatre District, Rosebud of Highland Park, Rosebud Italian Specialties and Pizzeria, Rosebud Burger & Comfort Foods, Rosebud Trattoria, Joe Fish, EATT, Bar Umbriago, Ristorante Centro, Rosebud on Rush (collectively, Defendants).

In its litigation, EEOC alleged that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, ("Title VII) by failing to hire African-American applicants. Defendants filed an Answer in which they denied the allegations.

To resolve the case, Defendants and EEOC have entered into a Consent Decree which provides, among other things, that:

1)   Defendants will pay monetary relief to eligible claimants;

2)   Defendants are enjoined from discriminating against any employee because of race;

3)   Defendants will not retaliate against any employee who has made allegations of discrimination or participated in any way in a proceeding involving discrimination under Title VII or received any benefit as a result of the litigation or the Decree;

4)   Defendants will provide training to all employees on Title VII;

5)   Defendants will ensure that their policies and procedures comply with Title VII including making best efforts to hire African-Americans.

EEOC enforces the federal laws against discrimination in employment on the basis of race, color, religion, national origin, sex, religion, age, disability or genetic information. If you believe you have been discriminated against, you may contact EEOC at (312) 869-8009. EEOC charges no fees and has a TTD number.

## THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

**This Notice must remain posted for four years from the date below and must not be altered, defaced or covered by any other material. Any questions about this Notice or compliance with its terms may be directed to: Rosebud Settlement, EEOC, 500 West Madison Street, Suite 2000, Chicago, IL 60661.**

 May 30, 2017
Date

Mary M Rowland

Hon. Judge Mary Rowland
U.S. Magistrate Judge

# EXHIBIT C

**SOUTH SIDE**

- Ashburn
- Avalon Park
- Burnside
- Calumet Heights
- Chatham
- Chicago Lawn
- Douglas
- Englewood
- Fuller Park
- Grand Boulevard
- Grand Crossing
- Hyde Park
- Kenwood
- Morgan Park
- Oakland
- Pullman
- Riverdale
- Roseland
- South Chicago
- South Deering
- South Shore
- Washington Heights
- Washington Park
- West Englewood
- West Pullman
- Woodlawn

**WEST SIDE**

- Near West Side
- Austin
- East Garfield Park
- North Lawndale
- West Garfield Park
- West Humboldt Park
- Austin

**COOK COUNTY**

- Bellwood
- Broadview
- Burnham
- Calumet City
- Calumet Park
- Country Club Hills

- o <u>Dixmoor</u>
- o <u>Dolton</u>
- o <u>Ford Heights</u>
- o <u>Harvey</u>
- o <u>Hazel Crest</u>
- o <u>Markham</u>
- o <u>Matteson</u>
- o <u>Maywood</u>
- o <u>Olympia Fields</u>
- o <u>Phoenix</u>
- o <u>Richton Park</u>
- o <u>Riverdale</u>
- o <u>Robbins</u>
- o <u>South Holland</u>